NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0528n.06

No. 20-4318

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 18, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| MARC N. GREENBERG, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: McKEAGUE, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

In this child-sex-crime case, defendant appeals his thirty-six-month sentence and certain special conditions of his supervised release. We dismiss the appeal in part for lack of jurisdiction and affirm the district court's judgment.

I.

Defendant Marc Greenberg posed as a seventh-grade teacher in an online chat room. There he "met" someone who identified herself as an eleven-year-old girl in sixth grade, and the two engaged in a sexually explicit conversation. During the exchange, Greenberg requested that the minor undress, send him a picture, use a webcam, and perform sex acts. He also expressed a desire for the two to have sex and transmitted an obscene image.

Neither participant in this conversation was honest about who they were. Greenberg was a former lawyer and high school girls' basketball coach who was previously convicted of

possessing child pornography and transferring obscene material to minors. And, as is often the case, the preteen girl was really an undercover police officer. The resulting investigation revealed that Greenberg entered similar chat rooms hundreds of times over the prior year and a half and had searched many times for child pornography.

Defendant was charged with one count of attempting to transfer obscene material to an individual who had not attained the age of 16 years in violation of 18 U.S.C. § 1470. He pleaded guilty pursuant to a plea agreement, which contained a broad waiver of his appellate rights except "with respect to provisions of supervised release." And the plea agreement contemplated a thirty-six-month term of imprisonment followed by "a term of supervised release to be determined by the court." Greenberg remained out on a recognizance bond for several months until he was sentenced in accordance with those terms.

II.

We begin with Greenberg's challenge to a few of the imposed special conditions of supervised release. The terms of his plea agreement permit him to appeal this aspect of his sentence. But his preservation of a right to appeal does not excuse him from the commands of Federal Rule of Criminal Procedure 51. *See, e.g.*, *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). Greenberg failed to lodge any specific objections to his supervised-release conditions with the district court at sentencing despite having an opportunity to do so. Plain-error review therefore applies. *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012). Reviewing the district court's special conditions of supervised release for procedural and substantive reasonableness, *United States v. Carter*, 463 F.3d 526, 528–29 (6th Cir. 2006), we cannot agree that Greenberg demonstrated an obvious error affecting his substantial rights and the fairness, integrity, or public reputation of the judicial proceedings, *Zobel*, 696 F.3d at 566.

A.

Procedurally, a district court must "state in open court the reasons for its imposition of the particular sentence, including its rationale for mandating special conditions of supervised release." *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001) (internal quotation marks omitted). The district court here did just that.

A review of the sentencing hearing transcript reflects that several aspects of Greenberg's conduct drove the district court's sentence. First, the offense conduct. His chat conversation and transmittal of an obscene image was "truly repugnant," and the court could "only imagine the trauma and the effect it would have had if the individual was actually an 11 year old." Layered on top was the court's "truly . . . great concern" in protecting the public given Greenberg's risk of re-offending. It had significant justification for this unease: Greenberg had a previous conviction for "practically the same offense [and] same type of conduct." Despite receiving sex-offender treatment and completing two years of imprisonment and five years of supervised release for that conviction, Greenberg quickly "returned to his old [online] stomping grounds" hundreds of times over. (And there was evidence to suggest he did so *during* his prior term of supervised release.)

Yet, Greenberg objects because the district court did not specifically identify its reasons for imposing special conditions of supervised release independent of its sentencing explanation at large. We are not persuaded. A district court's consideration of the factors set forth in 18 U.S.C. § 3553(a) for purposes of justifying incarceration "can also demonstrate that the imposition of special conditions is procedurally reasonable." *Zobel*, 696 F.3d at 572. "[W]e do not demand a repetitive discussion of those factors where the special conditions of supervised release logically flow from the reasons the district court gave for imposing a sentence of incarceration." *United States v. Booker*, 994 F.3d 591, 598 (6th Cir. 2021) (internal quotation marks omitted). Here,

"[t]he district court's concerns about [Greenberg]'s risk of recidivism and the need to promote public safety formed the basis for both the prison term and the supervised release conditions it imposed, as the nature of the selected conditions makes clear." *Id.*

Accordingly, the district court did not err, let alone plainly so, when it did not separately explain its rationale for mandating special conditions of supervised release.

B.

A non-mandatory supervised-release condition is substantively reasonable if it (1) "is reasonably related to . . . the nature and circumstances of the offense and the history and characteristics of the defendant, and the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (2) "involves no greater deprivation of liberty than is reasonably necessary to achieve these goals"; and (3) "is consistent with any pertinent policy statements issued by the Sentencing Commission." *Zobel*, 696 F.3d at 573. On plain-error review, we see no issue with the special conditions imposed.

We can take two of those conditions together—prohibitions against having "contact with any minors other than his own biological children unless otherwise approved by the Court" and "loitering where minors congregate, such as, but not limited to, playgrounds, arcades, amusement parks, recreation parks, sports events involving minors, shopping malls, and public swimming pools." Given the nature of Greenberg's conviction generally and his history of engaging in similar conduct specifically, these conditions are reasonably related to the statutory-sentencing factors because they limit his access to children. *See, e.g.*, *id.* at 574–75. It is true that, to this point, Greenberg has only contacted minors online and there are no documented attempts at physical engagement; but "a sex offender does not get one free pass at child molestation before *prophylactic*

rules of supervised released designed to protect children become appropriate." *United States v. Widmer*, 785 F.3d 200, 206 (6th Cir. 2015) (citation omitted). The conditions are also appropriately tailored to Greenberg—he may, for example, have unrestricted contact with his own children, seek court approval for any other contact, and have certain incidental contact to engage in "normal commercial services." And to the extent Greenberg complains that these conditions are too vague and thus do not provide him with adequate notice of what is prohibited, no binding caselaw answers this question in his favor so he cannot overcome plain-error review. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). In fact, caselaw points in favor of these conditions. *See, e.g.*, *Zobel*, 696 F.3d at 575; *United States v. Frazier*, 547 F. App'x 729, 733–34 (6th Cir. 2013); *United States v. Cabrera-Jimenez*, 545 F. App'x 385, 389 (6th Cir. 2013).

That leaves us with the prohibition against "possess[ing] or us[ing] a computer or any device with access to any 'on-line computer service' at any location (including place of employment) without the prior written approval of the probation officer." We acknowledge that the internet's ubiquitous nature in today's modern life is practically unavoidable. But the sad reality is that the internet plainly facilitates child-sex crimes, which defendant knows now twice over. Some courts, we note, have been troubled with complete internet bans for certain sex offenders. *See United States v. Lantz,* 443 F. App'x 135, 141–44 (6th Cir. 2011) (collecting cases). But others have upheld restrictions similar to this one for those, like Greenberg, "who use the Internet to 'initiate or facilitate the victimization of children,'" *United States v. Borders*, 489 F. App'x 858, 863–64 (6th Cir. 2012) (citation omitted), especially when the conditions grant to probation officers the ability to approve internet usage as a way to facilitate a defendant's ability to appropriately interact with technology, *see United States v. Smith*, 564 F. App'x 200, 208 (6th Cir. 2014); *see also United States v. Wright*, 529 F. App'x 553, 557–58 (6th Cir. 2013). For these

reasons, and again given the lack of binding caselaw prohibiting otherwise, the district court did not commit plain error when it imposed a harsh, but reasonable, condition that is consistent with the sentencing objectives.

### III.

Greenberg raises two additional issues: the district court's refusal to credit the many months he spent out on a recognizance bond pending sentencing and the length of his thirty-six-month sentence. The government contends these issues are both outside the scope of his appeal notice and prohibited by the terms of an appeal waiver in his plea agreement. Because the former implicates our jurisdiction and the latter does not, *see, e.g.*, *United States v. Hack*, 999 F.3d 980, 983–84 (6th Cir. 2021), we consider first our authority to hear this aspect of Greenberg's appeal and hold that we lack jurisdiction to do so.

Federal Rule of Appellate Procedure 3(c)(1)(B) requires the parties to "designate the judgment, order, or part thereof being appealed" in the notice of appeal. "Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." *Smith v. Barry*, 502 U.S. 244, 248 (1992); *see also Isert v. Ford Motor Co.*, 461 F.3d 756, 759 (6th Cir. 2006) (describing Rule 3's requirements as "mandatory and jurisdictional in nature"). By enacting this provision, "Congress has limited this Court's appellate review to issues designated in the notice of appeal." *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001). Accordingly, if an appellant "chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir. 1985).

Greenberg's notice of appeal designates only a challenge "to provisions of supervised release set forth in the sentence imposed in this matter." Because the notice of appeal specifically

identified that issue only, we do not have jurisdiction to consider whether the district court erroneously refused to credit his time pending sentencing or imposed an unreasonable sentence. Nor may we, as Greenberg requests, excuse his failure to comply with Federal Rule of Appellate Procedure 3. *See Glover*, 242 F.3d at 335. We dismiss this aspect of Greenberg's appeal for lack of jurisdiction.

## IV.

For these reasons, we dismiss in part defendant's appeal for lack of jurisdiction and affirm the district court's judgment.